UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



| | | |
|---|---|---|
| JENNIFER BELFIGLIO-MARTLEY | * | CIVIL ACTION NO.: |
| **Plaintiff** | * | |
| | * | |
| v. | * | |
| | * | |
| | * | **JURY TRIAL DEMANDED** |
| WATERFORD COUNTRY SCHOOL, INC. | * | |
| **Defendant** | * | |
| | * | **JANUARY 20, 2011** |

### COMPLAINT

### I.  NATURE OF THE ACTION

1.      The plaintiff, Jennifer Belfiglio-Martley, ("Martley"), brings this action to recover

damages caused by the defendant employer's discrimination and retaliation for exercising rights

under Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices

Act, Conn. Gen. Stat. §46a-60 *et seq.*  Martley was constructively discharged when, after

repeated complaints to the defendant about a co-employee's sexual harassment of her over a

fifteen-month period, she was ordered to continue working with her harasser.

### II.  JURISDICTION AND PARTIES

2.      This suit is brought and jurisdiction lies pursuant to 42 U.S.C. §2000e, as

amended by the Civil Rights Act of 1991, ("Title VII") and 28 U.S.C. §1331.  The unlawful

employment practices alleged below were committed within the State of Connecticut.

Accordingly, venue lies within this judicial district pursuant to 42 U.S.C. §2000e-5(f)3 and 28

U.S.C. §1391(b).

3.　　Plaintiff, Jennifer Belfiglio-Martley, ("Martley"), is a citizen of the United States who presently resides at 25 Avery Street, Mystic, Connecticut, 06355.

4.　　Waterford Country School, Inc., ("School"), is a private educational and treatment facility located at 78 Hunts Brook Road, Quaker Hill, Connecticut, 06375.  The facility provides a variety of programs for children and families, including residential treatment, group homes, crisis intervention emergency shelter services, foster care homes, day treatment, special education for children remaining in their homes and educational and therapeutic programs offered to community schools and organizations.

5.　　The School was an employer of Martley at all relevant times within the meaning of 42 U.S.C. §2000e(b) since it was engaged in commerce and employed more than fifteen employees for each working day during each of the twenty (20) or more calendar weeks in the current or preceding calendar year.  The School employs approximately 314 employees.

6.　　All conditions precedent to jurisdiction under Title VII and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60 *et seq.*, have occurred or have been satisfied.  Martley filed a timely charge of discrimination and retaliation with the Equal Employment Opportunities Commission and the Connecticut Commission on Human Rights and Opportunities on or about February 26, 2010.  On or about November 26, 2010, she received a Notice of Right to Sue dated November 24, 2010 (Attached).  This complaint is timely filed in

accordance with 42 U.S.C. §2000e-5 and Conn. Gen. Stat. §46a-101.

## III.   ALLEGATIONS

7.     Martley was hired on April 17, 2006, by the School as a Clinical Case

Coordinator at a salary of $36,972.00.  At the time of her hire, Martley's unmarried name was

Jennifer Belfiglio.

8.     She received satisfactory evaluations in the performance of my duties and periodic

wage increases.  She had no disciplinary record during her employment with the School.

9.     On or about July 1, 2009, Martley received a wage increase to $42,021.00 in the

position of Licensed Clinical Social Worker (LCSW).

10.     However, during her employment at the School, she was forced to endure a hostile

work environment and sexual harassment by a co-worker, Darryl Gibson, ("Gibson"), Supervisor

of the Rita's House STAR Shelter program.

11.     Such offensive conduct by Gibson included repeatedly asking her out for

drinks and for a date; touching her body; making comments about her body; stating that she had

nice breasts; making comments about her backside in jeans; stating that she looked good in

certain clothing; asking for hugs; stating that he wanted to have sex with her and that there were

"plenty of blind spots where we could do it;" telling her that she wanted his big hands on her; and

sending her pornographic texts, pictures and animated pornographic phone texts of penises and

intercourse.  Gibson would also call her at home.

3

12.     Martley first brought her complaint of sexual harassment to her supervisor, Anita Edelmen, in September, 2008. However, she failed to investigate and take any remedial action. She told Martley to be firm with Gibson in telling him to stop his harassing conduct.

13.     Martley attempted to re-arrange and re-schedule her work to avoid contact with Gibson. She continued to feel very uncomfortable in his presence.

14.     Gibson began withholding information from Martley necessary to perform her duties making it very difficult to do her job. Her supervisors were critical of her work and defended Gibson when she attempted to explain how his conduct affected her work.

15.     In October, 2008, and again in November, 2008, Martley spoke to the Director of Human Resources, Ann Morey, about the sexual harassment. However, she failed to investigate and take any remedial action. She told Martley to see the Executive Director.

16.     On or about December 24, 2008, Martley reported Gibson's sexually offensive and harassing conduct to the School's Executive Director, David Moorehead, ("Moorehead"), in his office. She explained that Gibson's offensive conduct was interfering with her job performance and case management.

17.     However, Moorehead failed to take any remedial action and Martley was forced to continue working in an offensive and hostile work environment with Gibson. After a relatively brief respite, the pattern of harassment continued beginning in August, 2009.

18.     Martley again appealed to Moorehead and met with him on December 2,

2009.  At that meeting, she displayed the pornographic animated text which Gibson had sent to her on her cell phone.  She also submitted a detailed chronological log of Gibson's offensive conduct beginning in August, 2008.  She explained that she was stressed to work in a "hostile environment" and did not want to work with Gibson any longer.

19.     By letter to Martley dated December 3, 2009, Moorehead stated that he was "very disappointed to learn that issues may have come back that we all felt had been dealt with effectively early this year."

20.     The School's response at this time was to suspend Martley on administrative leave with pay pending an investigation.  No such action was taken with Gibson.

21.     While on administrative leave, Martley received a letter from Moorehead dated December 18, 2009, titled, "Resolution of the complaint made by you concerning Darryl Gibson."  The letter criticized Martley for not submitting "a formal complaint in accordance with established procedures, or on a timely basis, ..." and indicated that an investigation with an attorney would be initiated.

22.     The School's investigative report focused only upon the pornographic texts submitted to Martley by Gibson and concluded that Gibson engaged in submitting, not only to her but other staff, text messaging labeled "humor" which "could be deemed to be offensive by those who received it."  The report stated that the School had taken "appropriate disciplinary action against Darryl Gibson for engaging in prohibited non-work related contacts with you ...."

However, the letter stated Martley's paid administrative leave would terminate on December 21, 2009, and that she would resume her Clinical Case Coordinator duties in the Rita's House on December 22, 2009.

23.     Because the School failed to take appropriate remedial action and instructed her to continue working in an intolerable, hostile and retaliatory work environment with Gibson at the Rita's House, Martley resigned her employment by voice mail message on December 21, 2009 and by letter dated December 22, 2009.  Martley's letter stated, "The steps you indicated in your letter to me speaking to the resolution of the complaint are the same ineffective steps that were taken last year at this time.  As a result, I have no other choice but to resign."

24.     On or about January 26, 2010, after her constructive discharge, Martley received a copy of a letter dated December 3, 2009, from Moorehead to Gibson, titled, "Harassment Complaint Follow-up - Interim Restrictions."  The letter outlined Gibson's contact restrictions with Martley and other staff and recited the similar complaints received about Gibson one year prior.

25.     Also on or about January 26, 2010, Martley received a copy of a letter dated January 19, 2010, from Moorehead to Gibson, imposing a three-day suspension on Gibson.  The letter stated that "the allegations against you are not supportive of the charge of "sexual harassment, " which confirmed her suspicions as to why her complaints of sexual harassment were consistently ignored.

## COUNT ONE: CIVIL RIGHTS VIOLATION AND SEXUAL HARASSMENT

26.     1-25.  Plaintiff hereby incorporates paragraphs 1-25 by reference.

27.     Defendant's conduct created a hostile and offensive work environment for plaintiff in violation of Title VII, as amended by the Civil Rights Act of 1991.

28.     Defendant's conduct in subjecting Martley to a hostile and offensive work environment, in failing to investigate and/or acknowledge and remedy the sexual harassment to which she was subjected, despite her continuing complaints and defendant's knowledge of the unlawful conduct, discriminatorily denied Martley equal treatment on the basis of her sex and the right to work in an environment free of sexual harassment, in violation of Title VII, as amended by the Civil Rights Act of 1991.

29.     Defendant engaged in such discriminatory and unlawful practices with malice or reckless indifference to the federally protected rights of the plaintiff.

30.     As a direct and proximate result of the defendant's discriminatory and unlawful conduct, the plaintiff suffered and continued to suffer damages, including the loss of wages and benefits, loss to her future earning potential and mental anguish and emotional distress.

## COUNT TWO: CIVIL RIGHTS VIOLATION AND RETALIATORY DISCHARGE

31.     1-30.  Plaintiff incorporates paragraphs 1-30 by reference.

32.     In response to her protected opposition and complaints of unlawful sexual

harassment, the defendant subjected the plaintiff to retaliatory treatment in violation of Title VII, including her constructive discharge from employment.

33.     The defendant's retaliatory conduct of constructively discharging the plaintiff after she had complained about her sexually hostile and offensive work environment at the School had the effect of dissuading any other employee from making or supporting a charge of discrimination.

34.     The defendant engaged in such retaliatory practices with malice or reckless indifference to the federally protected rights of the plaintiff.

35.     As a direct and proximate result of the defendant's retaliatory and unlawful conduct, the plaintiff suffered and continues to suffer damages, including the loss of wages and benefits, loss to her future earning potential and mental anguish and emotional distress.

## COUNT THREE: SEXUAL HARASSMENT IN VIOLATION OF CONN. GEN. STAT. 46a-60(a)(1) and (8).

36.     1-35.   Plaintiff hereby incorporates paragraphs 1-35 by reference.

37.     Defendant's conduct created a sexually hostile and offensive work environment for plaintiff in violation of Conn. Gen. Stat. §§46a-60(a)(1) and (8).

38.     Defendant engaged in such discriminatory and unlawful conduct with reckless indifference to plaintiff's rights or in an intentional or wanton violation of those rights under

Connecticut law.

39.     As a direct and proximate result of the defendant's discriminatory and unlawful

conduct, the plaintiff suffered and continues to suffer damages, including the loss of wages and

benefits, loss to her future earning potential and mental anguish and emotional distress.

## COUNT FOUR: RETALIATORY DISCHARGE IN VIOLATION OF CONN. GEN. STAT. §46a-60(a)(4).

40.     1-39.  Plaintiff hereby incorporates paragraphs 1-39 by reference.

41.     In response to plaintiff's complaints of a sexually hostile and offensive work

environment, defendant subjected her to retaliatory treatment in violation of Conn. Gen. Stat.

§46a-60(a)(4), including her constructive discharge from employment.

42.     Defendant's retaliatory conduct of constructively discharging plaintiff after she

had continuously complained to the defendant about the sexually hostile and offensive work

environment had the effect of dissuading any other employee from making or supporting a charge

of discrimination.

43.     Defendant engaged in such retaliatory and unlawful conduct with reckless

indifference to plaintiff's rights or in an intentional or wanton violation of those rights under

Connecticut law.

44.     As a direct and proximate result of the defendant's retaliatory and unlawful

conduct, the plaintiff suffered and continues to suffer damages, including the loss of wages and

benefits, loss to her future earning potential and mental anguish and emotional distress.

## COUNT FIVE: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

45.     1-44.   1-44.  Plaintiff hereby incorporates paragraphs 1-44 by reference.

46.     The defendant's unreasonable conduct in the termination process of requiring Martley to continue to work with her harasser after her repeated complaints of sexual harassment was sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.

47.     As a direct and proximate result of the defendant's unlawful conduct, plaintiff has suffered severe emotional distress, extreme anxiety, worry, personal and professional humiliation and other physical and emotional symptoms.


## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays that his Court take jurisdiction over this complaint and grant judgment against the defendant.  Plaintiff prays that the following relief be ordered:

1.      Enter a judgment, pursuant to 42 U.S.C. §2000e-5(g)(1) and Conn. Gen. Stat. §46a-104, against the defendant for the monetary losses sustained as a direct result of defendant's discrimination and retaliation against the plaintiff;

2.   Enter a judgment, pursuant to 42 U.S.C. §2000e-5(g)(1), 28 U.S.C. §1961 and

Conn. Gen. Stat. §46a-104, against the defendant for the interest on plaintiff's

monetary losses in paragraph 1 above.

3.   Enter a judgment, pursuant to 42 U.S.C. §2000e-5(g)(1) and Conn. Gen. Stat.

§46a-104,  against the defendant for front pay, in lieu of reinstatement.

4.   Enter a judgment, pursuant to 42 U.S.C. §1981a(b), against the defendant for

punitive and compensatory damages.

5.   Enter a judgment, pursuant to 42 U.S.C. §2000e-5(k) and Conn. Gen. Stat.

§46a-104, against the defendant and in favor of the plaintiff for the reasonable

attorney's fees and costs incurred by plaintiff in connection with the instant

action.

6.   Award plaintiff such further and additional relief as the Court may deem just and

proper.

THE PLAINTIFF,
JENNIFER BELFIGLIO-MARTLEY

By: _____
Morris J. Busca

Federal Bar No. CT 20200
Busca Law Firm, LLC
300 State Street, Suite 315-316
New London, CT 06320-6152
Tel.  860-447-3222
Fax.  860-447-3909
mickey@mjbuscalaw.com

12

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JENNIFER BELFIGLIO-MARTLEY** | * | **CIVIL ACTION NO.:** |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **WATERFORD COUNTRY SCHOOL, INC.** | * | |
| **Defendant** | * | |
| | * | **JANUARY 20, 2011** |

## CLAIM FOR JURY TRIAL

Plaintiff claims a jury trial on all counts of her complaint.

THE PLAINTIFF,
**JENNIFER BELFIGLIO-MARTLEY**


By: _____
Morris J. Busca

Federal Bar No. CT 20200
Busca Law Firm, LLC
300 State Street, Suite 315-316
New London, CT 06320-6152
Tel.  860-447-3222
Fax.  860-447-3909
mickey@mjbuscalaw.com

13

EEOC Form 161-B (11/09)

U.S. ~~~AL EMPLOYMEN~ ~PPORTUNITY COMM~~ ~ON

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Jennifer Belfiglio**
     **25 Cottrell Street**
     **Mystic, CT 06355**

From:  **Boston Area Office**
       **John F. Kennedy Fed Bldg**
       **Government Ctr, Room 475**
       **Boston, MA 02203**

☐  *On behalf of person(s) aggrieved whose identity is*
   *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2010-00644 | **Anne R. Giantonio,**<br>**Intake Supervisor** | (617) 565-3189 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Robert L. Sanders,**
**Area Office Director**

NOV 2 4 2010

*(Date Mailed)*

cc:  **WATERFORD COUNTRY SCHOOL, INC.**
     **78 Hunt'S Brook Road**
     **P.O. Box 408**
     **Quaker Hill, CT 06375**

     **Morris J. Busca**
     **Busca Law Firm**
     **300 State Street, Suite 315-316**
     **New London, CT 06320**