UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JENNIFER BELFIGLIO-MARTLEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 3:11cv125 (MRK) |
| | : |
| WATERFORD COUNTRY SCHOOL, INC., | : |
| | : |
| Defendant. | : |

**MEMORANDUM OF DECISION**

Plaintiff Jennifer Belfiglio-Martley brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.*, against Waterford Country School, Inc. ("Waterford") alleging discrimination based on the existence of a hostile work environment, retaliation, and constructive discharge. Ms. Belfiglio-Martley also brings a state law claim for negligent infliction of emotional distress. Pending before the Court is Waterford's Motion for Summary Judgment [doc. # 39]. For the reasons discussed below, Waterford's motion is granted in part and denied in part.

**I.**

This Court applies a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). A "material fact" is one whose resolution will affect the ultimate determination of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *See id.*; *see also Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam).

The facts incorporated in the analysis are culled from the parties' Local Rule 56(a) Statements [docs. # 40-1, 43], affidavits, and exhibits. All of the facts are undisputed unless otherwise noted, and the Court presents them "in the light most favorable to the nonmoving party"—here, Ms. Belfiglio-Martley—after drawing "all reasonable inferences in [her] favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted).

## II.

### A.

"In order to prevail on a hostile work environment claim, a plaintiff must first show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quotation marks and alterations omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Hostile work environment claims are analyzed similarly under Title VII and CFEPA. *See Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002) ("[Connecticut state

courts] look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both.").

A plaintiff can demonstrate the requisite severity by showing "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (quotation marks omitted); *see also Harris*, 510 U.S. at 23 (noting that an evaluation must be take into account the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004) (same). Because Ms. Belfiglio-Martley does not describe any one single act that was so egregious as to be extraordinarily severe, *see Cruz*, 202 F.3d at 570, she must instead state a hostile work environment claim that "is composed of a series of separate acts that collectively constitute 'one unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S .C. § 2000e-5(e)(1)). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Feingold*, 366 F.3d at 150 (quotation marks omitted). Such conduct must constitute harassment both objectively—from the perspective of a reasonable person in the plaintiff's position—and subjectively. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004), *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001).

Even ignoring some of the more egregious and contested allegations, the parties agree that Darryl Gibson, a co-worker, repeatedly asked Ms. Belfiglio-Martley out for drinks, asked

her for hugs, made comments about her physical appearance, and sent her inappropriate animated texts. Ms. Belfiglio-Martley also alleges that, when she refused Mr. Gibson's advances, he made her work more difficult by not providing her with necessary information and by lying about her performance to her supervisor, Assistant Program Director Anita Edelman.

In addition to Ms. Belfiglio-Martley's deposition testimony—which this Court must credit at the summary judgment stage, *see Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 555 (2d Cir. 2010)—two other female employees have submitted affidavits stating that they either witnessed Mr. Gibson acting inappropriately towards Ms. Belfiglio-Martley and that Mr. Gibson made inappropriate comments to them or others. *See* Pl.'s Statement of Material Facts [doc. # 43] Exs. 23, 24 (Affidavits of Jasmine Collins and Kristan Dittman-Green); *see also Gorzinski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) ("The fact that other women in addition to [the plaintiff] testified to the harassing and pervasive nature of [a co-worker's] behavior further supports her claim."). Furthermore, both Ms. Belfiglio-Martley and Ms. Collins testified that Mr. Gibson enjoyed upsetting Ms. Belfiglio-Martley.

Based on these allegations, the Court concludes that a reasonable jury might find that Ms. Belfiglio-Martley suffered pervasive sexually hostile conduct in the workplace due to Mr. Gibson's actions.

B.

To establish a hostile work environment claim against Waterford, Ms. Belfiglio-Martley must also "demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer." *Feingold*, 366 F.3d at 150. "[W]hen the harassment is attributable to a coworker, rather than a supervisor, . . . the employer will be held liable only for its own negligence." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998). To impute Mr.

Gibson's actions to Waterford, Ms. Belfiglio-Martley must establish that Waterford either "failed to provide a reasonable avenue for complaint" or that "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (quotation marks omitted).

Regardless of whether Waterford's sexual harassment policies provided a reasonable avenue for complaint, a reasonable juror could find that Waterford knew or should have known about Mr. Gibson's harassment and yet failed to take appropriate remedial action. Under this standard, Ms. Belfiglio-Martley must show that "(1) *someone* had actual or constructive knowledge of the harassment; (2) the knowledge of this individual can be imputed to the employer; and (3) the employer's response, in light of that knowledge, was unreasonable." *Id.* at 763 (emphasis in original).

A reasonable juror could conclude that at least one, if not many, individuals had actual or constructive knowledge of Mr. Gibson's actions. Ms. Belfiglio-Martley allegedly reported Mr. Gibson's actions to Ms. Edelman, Shelter Director Matthew Menghi, and Executive Director David Moorehead. Ms. Edelman stated at her deposition that she understood Ms. Belfiglio-Martley's August 2008 complaint as being about sexual harassment. *See* Pl.'s Statement of Material Facts [doc. # 43] Ex. 25 at 49 ("I know it was a sexual harassment complaint.") (Edelman Dep.); *id.* at 50 (same). Ms. Edelman also states that she reported Ms. Belfiglio-Martley's complaint to Mr. Menghi. Mr. Moorehead, however, maintains that he did not hear of Ms. Belfiglio-Martley's complaint until she came directly to him in late December 2008, and in his deposition he repeatedly characterized it as involving only interpersonal issues. Potentially supporting this description is an e-mail Ms. Belfiglio-Martley wrote Mr. Gibson, stating that she did not believe he was sexually harassing her, but rather that he harassed her "in general as a co

5

worker."[1] Pl.'s Statement of Material Facts [doc. # 43] Ex. 8. However, Waterford received a copy of that e-mail when Ms. Belfiglio-Martley forwarded it to Ms. Edelman with the statement: "I feel [Mr. Gibson] is trying to intimidate me out of my job in anger of my making it clear that I do not want to socialize with him." *Id.* Additionally, Mr. Moorehead acknowledged in his deposition that one of the bases for her complaint—being repeatedly asked out after firm refusals—could constitute sexual harassment. *See id.* Ex. 26 at 44, 50, 67. Given these facts, a reasonable juror could conclude that Ms. Edelman, Mr. Menghi, and Mr. Moorehead each had actual or constructive knowledge of Mr. Gibson's actions.

An "official's actual or constructive knowledge will be imputed to an employer" when "a) [t]he official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company, or b) the official is charged with a duty to act on the knowledge and stop the harassment, or c) the official is charged with a duty to inform the company of the harassment." *Duch*, 588 F.3d at 763 (quotation marks omitted). Under Waterford's sexual harassment policy, all of the aforementioned individuals qualify under at least one of these criteria. *See* Pl.'s Statement of Material Facts [doc. # 43] Ex. 6 (Personnel Handbook) (requiring department heads or other administrators to report complaints of sexual harassment immediately to the Executive Director).

The final question, then, is whether Waterford's response was appropriate. *See Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ("If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate.").

---

[1] Ms. Belfiglio-Martley states in her deposition that she did not understand at that time that retaliation for refusing advances could itself be a form of sexual harassment.

"Whether [a] company's response was reasonable has to be assessed from the totality of circumstances." *Distasio*, 157 F.3d at 65. A reasonable juror could find that Waterford's response was unreasonable, as Mr. Gibson continued to harass Ms. Belfiglio-Martley, both generally and sexually, after she made her initial complaint and after remedial measures had been put into place. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000) ("[I]f harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate."); *see also Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999) ("Factors in assessing the reasonableness of remedial measures may include . . . whether or not the measures ended the harassment." (citations omitted)).

Additionally, there is some question as to whether Ms. Edelman and Mr. Menghi responded promptly to Ms. Belfiglio-Martley's initial complaint. Although Ms. Edelman unequivocally recognized that the initial August 2008 complaint was one of sexual harassment, she reported it only to Mr. Menghi. Neither Ms. Edelman nor Mr. Menghi reported it to Mr. Moorehead, as at least one of them was required to do under Waterford's sexual harassment policy. Mr. Moorehead accordingly did not find out about Ms. Belfiglio-Martley's experiences until she reported them to him directly in late December 2008—approximately three months after her initial complaint. A reasonable juror could conclude that Waterford's response was therefore not appropriately prompt. *See Duch*, 588 F.3d at 766-67 (noting that a formal investigation of alleged harassment was not commenced until approximately three months a plaintiff's supervisor allegedly learned of it, and that a jury could therefore conclude that the employer's response was not effectively remedial and prompt).

A reasonable jury could conclude that Mr. Gibson's actions were pervasive and sexually hostile and that these actions could be imputed to Waterford due to its negligence. Accordingly,

Ms. Belfiglio-Martley's hostile work environment claim survives Waterford's motion for summary judgment.

### III.

Under Title VII, it is unlawful for an employer to discriminate against an employee "because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3a. In evaluating Title VII retaliation claims, courts apply the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kaytor*, 609 F.3d at 552. A plaintiff must establish a *prima facie* case; the employer may then come forward with a legitimate, non-discriminatory reason for the termination; the plaintiff then has an opportunity to produce evidence and carry the burden of persuasion that the proffered reason is a pretext and that the real reason for the termination was the plaintiff's membership in a protected class. *See id.* at 552-53. To establish a *prima facie* case of retaliation, Ms. Belfiglio-Martley must demonstrate "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Id.* at 552. Discriminatory retaliation claims are analyzed similarly under Title VII and CFEPA. *See Craine*, 259 Conn. at 637 n.6.

Neither party contests that Ms. Belfiglio-Martley has established the first two elements of a *prima facie* case for retaliation, especially as she complained of sexual harassment to her supervisor and the organization's executive director. Waterford maintains, however, that Ms. Belfiglio-Martley suffered no adverse employment action, and therefore cannot establish either

that element or a causal connection between her protected activity and an adverse employment action.

The standard for a materially adverse employment action is slightly different in Title VII retaliation claims than for Title VII discrimination claims. *See Cunningham v. New York State Dept. of Labor*, 326 F. App'x 617, 620-21 (2d Cir. 2009) (summary order) (noting that the latter requires "materially significant disadvantages with respect to the terms of plaintiff's employment," while the former depends "upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position" (quotation marks, alterations, and citations omitted). The Supreme Court has held that the anti-retaliation provision of Title VII "covers those (and only those) employer actions that would have been materially adverse to the reasonable employee or job applicant . . . . [T]hat means that an employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). In determining whether an alleged act of retaliation rises to the level of an adverse employment action, "[c]ontext matters," since "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simply reiterating of the words used or the physical acts performed." *Id.* at 69 (quotation marks omitted).

In support of her claim that she suffered an adverse employment action for Title VII retaliation purposes, Ms. Belfiglio-Martley notes that Ms. Edelman ordered her to seek Mr. Gibson's approval regarding her recommendations to the consulting staff psychiatrist for medications for the shelter children; that she had to invite Mr. Gibson to weekly discharge meetings for the children residents; that she could not intervene in crisis management problems

with residents, despite that being her responsibility as a clinical case coordinator; and that she had to conduct her sessions with children in Mr. Gibson's office at the Rita Shelter, rather than at her office, such that she did not have much-needed privacy. All in all, Ms. Belfiglio-Martley felt that she "couldn't make a move without Mr. Gibson okaying it." Pl.'s Statement of Material Facts [doc. # 43] Ex. 27 at 35 (Belfiglio-Martley Dep.). A reasonable juror could conclude that these changes—most of which resulted in Ms. Belfiglio-Martley working more closely with, and in an inferior position to, Mr. Gibson—could collectively send a message dissuading a reasonable worker from making additional complaints.

Additionally, Ms. Belfiglio-Martley was criticized by Ms. Edelman for creating a "hostile environment" for Mr. Gibson. *See id.* Ex. 25 at 68, 109 (Edelman Dep.); *id.* Ex. 27 at 36 (Belfiglio-Martley Dep.). Ms. Belfiglio-Martley also received an unfavorable review in one category of her 2009 annual evaluation. On a three point scale of "Needs Improvement," "Effective," and "Commendable," Ms. Belfiglio-Martley was rated "Commendable" in her 2008 evaluation for "Interpersonal Relationships." The accompanying comment states: "Jenn brings a sparkle not only to the residents in Cottage 2, but also with all the staff. She is able to communicate effectively and works well with all her co-workers." *Id.* Ex. 11 (2008 Evaluation). However, her 2009 evaluation, completed by Ms. Edelman, rates her as "Needs Improvement" in the same category. The accompanying narrative states that she makes inappropriate remarks, discusses personal matters, and doesn't respect boundaries. After receiving this negative evaluation, Ms. Belfiglio-Martley wrote Ms. Edelman noting that this was the first she had heard of this as a problem and that no one had approached her about any complaints. While Ms. Edelman's critique and the variations in Ms. Belfiglio-Martley's evaluations may not have been enough to deter a reasonable employee from making a complaint, it is worthwhile to note these

details in attempting to understand Waterford's workplace environment and Ms. Belfiglio-Martley's claim that she believed that she might lose her job if she complained about Mr. Gibson again. *See Burlington Northern*, 548 U.S. at 57, 69.

Furthermore, the Second Circuit has found that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy [the adverse action] prong of the retaliation *prima facie* case." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999), *abrogated on other grounds by Burlington Northern*, 548 U.S. 53. The Second Circuit cautions, however, that there are no bright-line rules in this evaluation and that "not every unpleasant matter short of discharge or demotion creates a cause of action for retaliatory discharge." *Id.* at 446 (quotation marks and alterations omitted).

Interpreting the alleged facts in Ms. Belfiglio-Martley's favor, the Court finds that a reasonable juror might determine that Mr. Gibson's general harassment—such as his refusal to provide Ms. Belfiglio-Martley with the information she needed to complete her job—went effectively unchecked, that Ms. Edelman permitted such harassment, and that at least some of this harassment occurred as a result of Ms. Belfiglio-Martley's initial complaint. As a result, Ms. Belfiglio-Martley's retaliation claim survives Waterford's motion for summary judgment.

### IV.

Constructive discharge occurs when "an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003) (quotation marks omitted). In order to prevail on a constructive discharge claim, a plaintiff "must show that the abusive working environment

became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Id.* at 147 (quotation marks omitted).

A "claim for constructive discharge requires the plaintiff to prove that her employer *deliberately* and discriminatorily created work conditions 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006) (emphasis added) (quoting *Suders*, 542 U.S. at 141). "[I]f a plaintiff suing for constructive discharge cannot show specific intent, he or she must at least demonstrate that the employer's actions were deliberate and not merely negligent or ineffective." *Petrosino*, 385 F.3d at 229-30 (quotation marks and alterations omitted). Thus, where a hostile work environment claim based on co-workers's actions can be established merely by showing that the employer "knew of the harassment but did nothing about it," *Whidbee*, 223 F.3d at 72 (quotation marks omitted), a claim for constructive discharge requires a showing, at a minimum, that the employer "deliberately" created intolerable working conditions, *Ferraro*, 440 F.3d at 101; *see also Whidbee*, 223 F.3d at 74 ("Something beyond mere negligence is required."). Unintentionally ineffective remedial action, even if established, is not sufficient to hold an employer liable for constructive discharge. *See id.* at 74.

Ultimately, the question is whether a reasonable juror could find that Waterford *deliberately intended* that Ms. Belfiglio-Martley resign when it instructed her to return and continue working with Mr. Gibson.[2] Based on the facts in the record, the Court does not believe

---

[2] Waterford also argues that, because Ms. Belfiglio-Martley did not consider Waterford's remedial alternatives before concluding that resignation was the only option, she cannot make out a claim of constructive discharge. *See Cooper v. Wyeth Ayers Lederle*, 106 F. Supp. 2d 479,

12

that a reasonable juror could find in Ms. Belfiglio-Martley's favor on this point. There is no evidence that Waterford knew that Ms. Belfiglio-Martley would resign rather than continue to work with Mr. Gibson, especially as she had been amenable to attempting remedial procedures in the past.

Summary judgment is therefore granted to Waterford with regard to Ms. Belfiglio-Martley's constructive discharge claim.

## V.

To assert a claim of negligent infliction of emotional distress in the employment context,

> a plaintiff must prove that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, the plaintiff's distress was foreseeable, the emotional distress was severe enough that it might result in illness or bodily harm, and, finally, that the defendant's conduct was the cause of the plaintiff's distress. . . . Such a claim in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process rather than in an ongoing employment relationship. Finally, to prevail on a claim of negligent infliction of emotional distress arising in the employment setting, a plaintiff need not plead or prove that the discharge, itself, was wrongful, but only that the defendant's conduct in the termination process created an unreasonable risk of emotional distress.

*Olson v. Burlington-Bristol Health Dist.*, 87 Conn. App. 1, 5 (Conn. App. Ct. 2005) (quotation marks and citations omitted). As this Court has observed before, "the cause of action may not encompass the entire course of conduct during the ongoing employment relationship that also

---

495 (S.D.N.Y. 2000). In support of this claim, Waterford notes that Ms. Belfiglio-Martley accepted another job (where she ultimately was paid more than in her Waterford position) before learning of Waterford's intended remedial actions, strongly suggesting that Waterford's actions were irrelevant to Ms. Belfiglio-Martley's decision to leave. This argument carries less weight. As Ms. Belfiglio-Martley notes in her deposition, at that time, this other "job" was just a weekend, fee-for-service position, not salaried full-time employment with benefits. Ms. Belfiglio-Martley maintains that she "wanted to stay [at Waterford] and then just build up a practice on the side to make extra money for my children." Pl.'s Statement of Material Facts [doc. # 43] Ex. 27 at 112 (Belfiglio-Martley Dep.). Had Waterford's proposed remedial actions been reasonable, Ms. Belfiglio-Martley maintains, she would have continued to work there.

supports the employee's hostile work environment or constructive discharge claims." *Zittoun v. Ratner Co.*, No. 08cv1139 (MRK), 2009 WL 82509, at *3 (D. Conn. Jan. 12, 2009).

A reasonable juror could not find that Waterford, merely by asking Ms. Belfiglio-Martley to return to work with Mr. Gibson under its proposed remedial measures, created a foreseeable and unreasonable risk of severe emotional distress. While Mr. Gibson's conduct was inappropriate and may have created an objectively hostile work environment, it was hardly obvious that Ms. Belfiglio-Martley's response to such a request would be severe enough to risk serious illness or bodily harm.

Nor does Ms. Belfiglio-Martley offer evidence to support a claim of having experienced such severe distress. There is evidence in the record that Ms. Belfiglio-Martley was clearly upset while working at Waterford with Mr. Gibson, that she did consult with a counselor about her fear of losing her job for complaining about Mr. Gibson's action, and that she is presently seeing a counselor and taking medications to cope with the stress of this lawsuit. However, there is a dearth of evidence that *Waterford's* action that led to her alleged constructive discharge—asking her to continue working with Mr. Gibson under close supervision—caused her mental anguish severe enough to result in illness.

Because she has not produced facts establishing the required elements of a negligent infliction of emotional distress claim, summary judgment is granted with regard to Ms. Belfiglio-Martley's state law claim.

## VI.

For the reasons given above, Waterford's Motion for Summary Judgment [doc. # 39] is GRANTED IN PART and DENIED IN PART. As there are genuine disputes as to material facts regarding Ms. Belfiglio-Martley's hostile work environment and retaliation claims, they are

preserved. However, because Ms. Belfiglio-Martley does not marshal sufficient evidence to preserve her constructive termination and negligent infliction of emotional distress claims, they are dismissed. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011) (affirming district court's denial of summary judgment on hostile work environment and retaliation claims and grant of summary judgment on constructive discharge claim). The Court will schedule trial for October 2012, and the parties will file a joint trial memorandum no later than 90 days after this order is issued in accordance with their proposed case management schedule.

                                                          **IT IS SO ORDERED.**

/s/      <u>Mark R. Kravitz</u>
         United States District Judge

Dated at New Haven, Connecticut: May 7, 2012.